Patsy J. **STEWART**, Plaintiff,

v.

Chairperson Clarence **THOMAS**,* Equal **Employment Opportunity Commission,**

and

Earl J. **Harper, Defendants.**

Civ. A. No. 81–1643.

United States District Court, District of Columbia.

May 6, 1982.

* In accordance with Fed.R.Civ.P. 25(d), Clayton Smith has been replaced by Clarence Thomas

892

in the capacity of Chairperson, Equal Employment Opportunity Commission as defendant to this action.

Susan C. Silber, Gagliardo & Silber, Washington, D. C., for plaintiff.

Rebecca L. Ross, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Before the Court is the motion to dismiss of defendant Earl J. Harper. In this action against Harper in his individual capacity and Clarence Thomas in his capacity as chairperson of the Equal Employment Opportunity Commission (EEOC), plaintiff alleges that she was subjected to verbal and physical sexual harassment and sex discrimination while she was employed as a legal clerk in the litigation department of the EEOC. Plaintiff charges the Commission with sex discrimination in violation of § 717 of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e–16(a). Plaintiff's claims against defendant Harper are founded, according to the complaint, on the common law theories of assault, battery, "outrage", and intentional infliction of emotional distress.

Plaintiff asserts that from March, 1979 to May, 1980 defendant Harper made periodic sexual advances to her at work and that his unwelcomed conduct included touching her in a sexual manner, caressing her body, attempting to kiss her and verbally pressuring her for sexual relations. She claims that the defendant intentionally created an extremely stressful work situation for her and that her refusal to comply with his demands caused him to place her on leave without pay status, assign her unnecessary work assignments, charge her with leave she had never taken, and inaccurately and unfavorably evaluate her work performance.

Defendant Harper moves to dismiss the action against him in his individual and official capacities on the grounds that 1) no tort of outrage exists in the District of Columbia, 2) plaintiff has failed to state a cause of action for intentional infliction of emotional distress, 3) the exclusive remedies for plaintiff's complaints lie under Title VII, and 4) the plaintiff's claims are barred

by the statute of limitations. Plaintiff contests each of these proposed grounds for dismissal.[1]

### 1. Plaintiff's Claim of Outrage

■ The fact that the District of Columbia has never recognized a tort labelled "outrage" does not mean that there is no such tort, but in the instant case this cause of action is asserted alongside a separate claim for intentional infliction of emotional distress. Neither the Restatement Second of Torts nor any of the cases to which either party refers distinguishes between these torts. The court agrees with the defendant's position that "outrage" is but another name for intentional infliction of emotional distress. The plaintiff's claim of outrage shall be stricken as redundant, pursuant to Fed.R.Civ.P. 12(f).

### 2. Plaintiff's Claim for Intentional Infliction of Emotional Distress

The defendant contends that the plaintiff has failed to state a cause of action for intentional infliction of emotional distress, see Reply to Plaintiff's Opposition to Defendant Harper's Motion to Dismiss at 9, and submits that the acts allegedly committed by him do not rise to the level of outrageousness needed to establish a claim for the tort.

The seminal case in this jurisdiction states that

> One who, without just cause or excuse, and beyond all the bounds of decency, purposely causes a disturbance of another's mental and emotional tranquility of so acute a nature that harmful physical consequences might be not unlikely to result, is subject to liability in damages for such mental and emotional disturbance even though no demonstrable physical consequences actually ensue.

Clark v. Associated Retail Credit Men of Washington, D. C., 105 F.2d 62, 65 (D.C.Cir. 1939).

■ This liability "clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities;" it is imposed only when the conduct goes "beyond all possible bounds of decency and [is] regarded as atrocious and utterly intolerable in a civilized community." Waldon v. Covington, 415 A.2d 1070, 1076 (D.C.App.1980); see also Rogers v. Loews L'Enfant Plaza Hotel, 526 F.Supp. 523, 530 (D.D.C.1981). This Court applied the test above to a recent case in which an employee alleged that she had been subjected to insulting and demeaning remarks, abusive language and sexually-motivated advances from her direct supervisor over a period of two months. The Court found that the plaintiff had "clearly alleged conditions and circumstances which are beyond mere insults, indignities and petty oppressions and which, if proved, could be construed as outrageous." Rogers v. Loews L'Enfant Plaza Hotel, 526 F.Supp. 523, 531 (D.D.C.1981). The plaintiff in this case alleges sexual harassment at least as blatant and offensive as that endured by the plaintiff in Rogers. It is clear that the facts she alleges present a prima facie case of intentional infliction of emotional distress.

### 3. Availability of Tort Remedies

In support of his motion for dismissal of the actions against him, the defendant further argues that Title VII provides the exclusive remedy for all of plaintiff's claims arising from this set of alleged facts and that the only proper defendant is the EEOC. He bases his argument on the holding of Brown v. General Services Administration, et al., 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) as augmented by the recent decision of Bundy v. Jackson, 641 F.2d 934 (D.C.Cir.1981).

In defendant's view, since Brown v. General Services Administration stands for the principle that Title VII provides the exclusive remedy for employment discrimination,

1. In his motion to dismiss this action, the defendant also asserted that he was not properly served in his individual capacity. As service has now been accomplished, he no longer raises this issue. See Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss at 1.

and since the court in *Bundy v. Jackson* held that employment discrimination prohibited by Title VII embraces sexual harassment, the exclusive remedy for all acts of sexual harassment on the job must be within Title VII, even though the acts might be cognizable as common-law torts had they occurred elsewhere.

*Brown* involved a plaintiff who sued the General Services Administration seeking relief for employment discrimination under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e et seq., 2000e-5, and under the Civil Rights Act of 1866 as amended, 42 U.S.C. § 1981. The Court held that the plaintiff was barred from relief under § 1981 for employment discrimination also cognizable under Title VII, basing its holding on the principle that "a precisely drawn, detailed statute pre-empts more general remedies." *Brown* at 834, 96 S.Ct. at 1968. That the Court placed great weight on the general/specific relationship between Title VII and § 1981 is evident from its discussion. The Court compared Brown to an earlier case involving the cancellation of state prisoners' good-time credits in which, "although acknowledging that the civil rights statute [42 U.S.C. § 1983] was ... literally applicable, [the court] held that challenges to the fact or duration of imprisonment appropriately lie only under habeas corpus, the 'more specific act' ..." *Brown* at 834, 96 S.Ct. at 1968, quoting *Preiser v. Rodriguez*, 411 U.S. 475, 489, 93 S.Ct. 1827, 1836, 36 L.Ed.2d 439 (1973). The Court also pointed to cases under the Federal Tort Claims Act and Federal Employees' Compensation Act in which it had "consistently held that a narrowly tailored employee compensation scheme pre-empts the more general tort recovery statutes." *Brown*, supra 425 U.S. at 834-5, 96 S.Ct. at 1968-69. As recently as last year, the Court of Appeals for this Circuit pointed to *Brown* as authority for the principle that "specific statutory provisions control over general provisions," *Lawrence v. Staats*, 640 F.2d 427, 432 (D.C.Cir.1981), petition for rehearing denied, 665 F.2d 1256 (D.C.Cir. 1981), and indeed, it was that principle which "led unerringly to the conclusion" in

*Brown*. *Brown* 425 U.S. at 835, 96 S.Ct. at 1969.

The *Brown* court also rested its decision on its belief that the structure of the 1972 amendment which extended the protection of the 1964 Civil Rights Act to federal employees confirms that Congress intended it to be pre-emptive. According to the Court, "the balance, completeness, and structural integrity" of the amendment and the "careful blend of administrative and judicial enforcement powers" were designed to prevent litigants from circumventing Title VII's rigorous administrative exhaustion requirements and time limitations "by the simple expedient of putting a different label on the pleadings." *Brown* at 832-3, 96 S.Ct. at 1967-68, *Preiser* 411 U.S. at 489, 93 S.Ct. at 1836.

 While we recognize the rationale behind *Brown*, the conclusion of that case is inapplicable to the facts of this one. Plaintiff Stewart bases her claims against the EEOC and Harper on two distinct and independent rights: her right to be free from discriminatory treatment at her jobsite and her right to be free from bodily or emotional injury caused by another person. This situation is controlled neither by *Brown* nor by the subsequent cases raised by the defendant which limit the remedies available to a plaintiff to redress violations of overlapping if not identical substantive rights. See *Berio v. EEOC*, 446 F.Supp. 171 (D.D. C.,1978), (plaintiff proceeding under Title VII barred from relief under § 1981 and Due Process clause of Fifth Amendment), *Carter v. Marshall*, 457 F.Supp. 38 (D.D.C. 1978), (constitutional claims under the First and Fifth Amendments based on discrimination and reprisal pre-empted by Title VII claims), and *Neely v. Blumenthal*, 458 F.Supp. 945 (D.D.C.1978) (damages claim under First Amendment barred because Title VII's remedial measures promised to be effective in redressing violations of plaintiff's right to expression). Unlike the litigants above, plaintiff Stewart does not ask this court to stretch "marginally applicable statutory, common law, and constitutional theories of individual recovery" (*Neely* at

952) to cover claims for which injunctive relief would be adequate. Nor does she attempt to deliberately bypass the specific procedures with which Title VII prefaces resort to the courts. On the contrary, she has exhausted her administrative remedies under Title VII and seeks additional relief under common-law tort theory to compensate for harms above and beyond discrimination which Title VII does not seek to remedy.

It is clear that *Brown* prohibits deliberately bypassing Title VII, but it is also logical that, despite the defendant's contentions, *Brown* does not prohibit federal employees who allege employment discrimination from suing on any cause of action arising from the same facts. For example, federal employees are permitted as a matter of course to bring suit under both Title VII and the Equal Pay Act. *See Cox v. University of the District of Columbia*, 24 F.E.P. Cases 693 (D.D.C.1980); *Nitterright v. Clayton*, 454 F.Supp. 130 (D.D.C.1978), and *Carter v. Marshall, supra.* The acts are to be construed in harmony and thus "the same facts may form the basis for redress under both [statutes] if the requirements of each are separately satisfied and the claimant does not reap overlapping relief for the same wrong." *Nitterright*, supra at 135; *Laffey v. Northwest Airlines*, 567 F.2d 429, 445 (D.C.Cir.1976). The common law torts alleged here, like the problem of unequal pay, are distinct from the wrongs redressed by Title VII and this plaintiff should not be prevented from pursuing separate remedies.

Both the plaintiff and the defendant draw the court's attention to *Dual v. Roudebush*, Civil Action 76–0005, (D.D.C. December 12, 1976) but that case does not settle the issue before this court. Plaintiff Dual alleged violations of Title VII as well as malicious interference with contractual relations and intentional infliction of emotional distress stemming from alleged race and sex discrimination to which she was subjected at work. The *Dual* court relied on *Brown* in dismissing the plaintiff's tort claims as subsumed by Title VII but stated that

"This court can conceive of a situation sufficiently divorced from a claim of employment discrimination, even though arising out of that context, such that *Brown* would be inapplicable. For example, this Court is confident that the effect of the Supreme Court decision is not that if an employer assaults an employee as a result of the latter's allegation of employment discrimination, the employee would be foreclosed from suing the employer for damages arising out of the assault and could only proceed under Title VII."

*Dual*, slip op. at pp. 2–3. One might interpret this to mean that acts of reprisal which are temporally distinct from the original act of discrimination give rise to independent substantive rights of the employee. However, courts have held that retaliatory actions may be within the scope of Title VII (see *Neely v. Blumenthal*, supra). The better interpretation is that physical assault, a highly personal violation beyond the meaning of "discrimination", is separately actionable. *Dual* thus supports maintaining distinct causes of action for assault and (by inference) battery in this case. Furthermore, although *Dual* disallowed recovery for emotional distress inflicted by the employer's *acts of discrimination*, it would be consistent with the holding of *Dual* to permit damages for emotional distress caused directly by the *acts of assault and battery*. In her complaint, plaintiff avers that both the defendant's assaultive conduct (paragraph 3) and his discriminatory treatment of her (paragraph 4) inflicted emotional distress upon her. To the extent that her emotional injuries were the result of the stressful work situation created by the defendant, her claim of intentional infliction of emotional distress is dismissed as subsumed within Title VII [2] but to the extent

2. Under Title VII, a victorious plaintiff may be awarded reinstatement, back pay, or "any other appropriate injunctive relief as the court deems appropriate", 42 U.S.C. § 2000e–5(g)

(1976) and the courts of this Circuit construe "equitable relief" to preclude any award of damages for emotional harm *resulting from a*

that her emotional injuries were a direct result of the defendant's assaultive behavior she may maintain her claim.

The holding of *Bundy v. Jackson*, 641 F.2d 934 (D.C.Cir.1981) does not force the court to conclude that the tortious actions which contributed to the sexually-motivated harassment of this plaintiff are solely remediable under Title VII. In *Bundy*, the Court of Appeals extended its earlier decision of *Barnes v. Costle*, 561 F.2d 983 (D.C. Cir.1977) (that sex harassment culminating in the abolition of plaintiff's job when she refused her boss' advances was actionable under Title VII) by holding that an employer violates Title VII merely by subjecting female employees to sexual harassment, even if the employee's resistance to that harassment does not cause the employer to deprive her of any tangible job benefits.

The objective of the *Bundy* court was to expand the scope of "discrimination with respect to the terms, conditions, or privileges of employment" to include within the meaning of that phrase the creation or condonation of a "substantially discriminatory work *environment*" (emphasis in original). *Bundy* at 943. The plaintiff in that case did not allege separate tort violations in addition to her claims under Title VII, and accordingly the issue now before this court was never discussed. Most significantly, the *Bundy* court made no mention of *Brown v. GSA* and apparently did not anticipate the relationship between the two cases suggested by the defendant here.

Until *Barnes v. Costle* and *Bundy v. Jackson*, the courts of the District of Columbia treated sexual harassment as a tort—a private harm. In her book, *Sexual Harassment of Working Women: A Case of Sex Discrimination*, Catharine MacKinnon highlights the limitations of this approach:

"Torts best redress injuries to one's person ... rather than to public and shared social existence [such as] sex in employment. The tort remedy attempts

Title VII violation. *Bundy v. Jackson*, 641 F.2d 934, 946, n.12 (D.C.Cir.1981) (emphasis added).

**3.** As discussed above, the plaintiff's claim of intentional infliction of emotional distress has

to monetize physical and psychic damage to the person, sometimes including punitive damages representing outrage, rather than to formulate redress in terms of hiring, seniority, or promotion ... To the extent that tort theory fails to capture the broadly social sexuality/employment nexus that comprises the injury of sexual harassment ... the personal approach on the legal level fails to analyze the relevant dimensions of the problem." (at p. 88).

The approach to sexual harassment which the defendant derives by fusing *Bundy* and *Brown* suffers from converse but equally serious limitations. The Title VII remedy for sex harassment formulates redress in terms of equitable measures but does not offer compensation for the physical and psychic damage to the person. To the extent that Title VII fails to capture the personal nature of the injury done to this plaintiff as an individual, the remedies provided by that statute fail to appreciate the relevant dimensions of the problem in this case. Accordingly, plaintiff Stewart's causes of action for assault, battery, and intentional infliction of emotional distress[3] shall not be dismissed.

### 4. Operation of the Statute of Limitations

Defendant Harper's final contention in his motion to dismiss is that the plaintiff's claims are barred by the applicable statutes of limitations.

The parties do not dispute that D.C. Code § 12–301 provides that actions for assault or battery must be brought within one year after the cause of action occurs, but the defendant argues that this statute applies to the claims of outrage (now dismissed) and intentional infliction of emotional distress as well because those torts are "similar to assault" and arise out of the same set of facts as the assault and battery

been dismissed only insofar as it results from the defendant's creation of a stressful work situation.

charges. (See Defendant's Memorandum in Support of Motion to Dismiss, p. 6). Section 12–301(4) enumerates those torts to which the statute applies (libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest, and false imprisonment) and we find no basis for expanding the statute to apply to torts not included in the list.

■ As to the claims of assault and battery, the issue raised here is whether the one-year statute of limitations was tolled for the purposes of this action when the plaintiff filed suit against defendant Harper in the Superior Court of the District of Columbia alleging assault, battery, outrage and intentional infliction of emotional distress.

In *Burnett v. New York Central Railroad Co.*, 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965), the Court considered the purpose of statutes of limitations, their effect on a defendant's right to be protected from stale claims and surprise, and their effect on a plaintiff's right to prosecute. "Statutes of limitations are primarily designed to assure fairness to defendants" and they prevent claims from being brought when the relevant evidence is so old as to be unreliable. *Burnett*, supra at 428, 85 S.Ct. at 1054, *Macklin v. Spector Freight Systems, Inc.*, 478 F.2d 979, 995, (D.C.Cir.1973). However, the *Burnett* court found that the "policy of repose ... is frequently outweighed ... where the interests of justice require vindication of the plaintiff's rights." *Id.* at 428, 85 S.Ct. at 1054. Here, the plaintiff timely filed her tort claims in the Superior Court and diligently pursued them until the actions were stayed. The defendant was served with notice of the claims brought here and in the Superior Court and has not

been deprived of the opportunity to preserve the appropriate evidence. This plaintiff, unlike the plaintiffs in the cases cited by the defendant,[4] was forced to delay bringing her tort claims into this forum by the administrative prerequisites of the Title VII suit; she filed her claims in the Superior Court to ensure that her causes of action would not expire before she could attach them to the Title VII case under the doctrine of pendent jurisdiction. We agree that the purpose of the statute of limitations would not be thwarted and the interests of judicial economy and efficiency would be well served were she allowed to maintain her tort claims in this forum.

In light of the foregoing, it is, by the Court, this 6th day of May, 1982 hereby

ORDERED that the claim of plaintiff Patsy Stewart against defendant Earl Harper for the tort of outrage is dismissed as redundant, and it is

FURTHER ORDERED that the motion of defendant Earl Harper to dismiss plaintiff's claims of assault, battery, and intentional infliction of emotional distress is denied, with the qualification that to the extent that plaintiff's claimed emotional injuries are alleged to have resulted from a stressful work environment rather than from assaultive behavior by defendant Harper, her claim for intentional infliction of emotional distress is dismissed as subsumed by Title VII.

---

**4.** Inapposite cases to which the defendant refers include *Brown v. Lamb*, 414 F.2d 1210 (D.C.Cir.1969), *cert. denied* 397 U.S. 907, 90 S.Ct. 904, 25 L.Ed.2d 88 (appellee attributed delay in filing suit to "estoppel effect" of appellant's informal assurances which lulled appellee into inaction), *Price v. U. S.*, 466 F.Supp. 315 (E.D.Pa.1979), (Federal Tort Claims suit which was basis for party pendent jurisdiction had been dismissed but plaintiff nonetheless sought resolution of state wrongful death

claims in federal court), *Ammlung v. City of Chester*, 494 F.2d 811 (3rd Cir. 1974), (plaintiff's state actions had been dismissed and could not be asserted as pendent claims to federal action after expiration of state limitations period) and *Board of Regents v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980) (plaintiff did not prevail in state court action and subsequently brought action anew in federal court based on same operative facts.)